# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUDDY HATCHER and HOLLEY HATCHER, | CASE NO. 1:11-cv-02015-AWI-SKO |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |
| v. | (Docket No. 15) |
| CITY OF PORTERVILLE, et al., | **ORDER DENYING AS MOOT DEFENDANTS' MOTION TO STAY** |
| Defendants. | (Docket No. 21) |

## I. INTRODUCTION

Plaintiffs Buddy and Holley Hatcher ("Plaintiffs") filed suit on October 27, 2011, in Tulare County Superior Court asserting claims against the City of Porterville (the "City"); the County of Tulare (the "County"); RailAmerica Operations Support Group, Inc.; RailAmerica Operations Shared Services, Inc.; RailAmerica, Inc.; San Joaquin Valley Railroad Company;[1] Union Pacific Railroad Company ("Union Pacific") (all railroad-entity defendants will be collectively referred to as the "Railroad Defendants"); and Does 1 through 1000.  The claims arise out of the December 2010 flooding of Plaintiffs' property located in Porterville, California.

---

[1] Defendants RailAmerica, Inc., RailAmerica Operations Shared Services, Inc., RailAmerica Operations Support Group, Inc., and San Joaquin Valley Railroad will be collectively referred to as "the RailAmerica Defendants" as they are represented by the same counsel and have submitted joint briefs.

On December 6, 2011, the RailAmerica Defendants removed the matter to this Court. (Doc. 1.) On December 29, 2011, Plaintiffs filed a motion to remand. (Doc. 15.) On January 6, 2012, the RailAmerica Defendants filed a motion to stay (Doc. 21); Union Pacific filed a statement of non-opposition (Doc. 29). Plaintiffs opposed the motion to stay the proceedings. (Doc. 27.)

The Court has reviewed the parties' briefs and all supporting documents and finds that the motion to remand and the motion to stay are suitable for decision without oral argument pursuant to the United States District Court for the Eastern District of California Local Rule 230(g). Therefore, the hearing set for February 8, 2012, is VACATED. For the reasons set forth below, Plaintiffs' motion to remand is GRANTED, and the RailAmerica Defendants' motion to stay the proceedings is DENIED as MOOT.

## II.   FACTUAL BACKGROUND

This case arises out of flooding that occurred on residential property in Porterville, California, in December 2010. (*See* Doc. 1, Exhibit 1, Plaintiffs' complaint ("Cmplt").) Plaintiffs are the owners of real property located at 476 West Westfield Avenue in Porterville, California (the "Property"). (Cmplt., ¶ 1.) From 1890 to 2010, railroad tracks have been located on the northeast boundary of Plaintiffs' Property. (Cmplt., ¶ 12.) Running along the northeast side of the railroad tracks lies Pioneer Ditch. (Cmplt., ¶ 13.)

According to Plaintiffs, the most recent Tulare County "Master Flood Control Plan" (the "Plan") integrates the Pioneer Ditch as part of its plan to control surface water runoff from undeveloped land. (Cmplt., ¶ 14.) Plaintiffs' Property is included in the portion of the Plan that is to be protected by Pioneer Ditch in the event of flooding. (Cmplt., ¶ 14.)

The County also owns a storm drain located on the northwest corner of Main Street and West Westfield Avenue, which carries water roughly 100 to 200 yards in an underground pipe and diverts surface runoff from Main Street into Pioneer Ditch. (Cmplt., ¶ 15.) The most recent City of Porterville Storm Water Management Program requires the City to annually inspect and survey the City's storm drain system, including individual storm drains. (Cmplt., ¶ 16.) Although the City channeled surface water into the storm drain located on the northwest corner of Main Street and

2

1  West Westfield Avenue, the storm drain does not appear on the City's survey and is not inspected
2  annually by the City. (Cmplt., ¶ 16.)
3      Between May 2010 and December 2010, the railroad tracks running adjacent to Plaintiffs'
4  Property were abandoned and removed. (Cmplt, ¶ 17.) In the process of removal, Pioneer Ditch was
5  filled with earth and debris that blocked the historic drainage. (Cmplt., ¶ 18.) The storm drain that
6  carried surface water from the northwest corner of West Westfield Avenue and Main Street was also
7  blocked with earth and debris as a result of the removal of the railroad tracks. (Cmplt. ¶ 18.) During
8  the track removal, the railroad bed was also graded, lowered, and widened. (Cmplt., ¶ 19.) As a
9  result, the railroad bed no longer functioned to capture and divert surface water into Pioneer Ditch.
10 (Cmplt., ¶ 19.) Finally, the railroad tracks that crossed West Westfield Avenue were removed.
11 (Cmplt., ¶ 20.) Those tracks had created two grooves that diverted surface water from West
12 Westfield Avenue into Pioneer Ditch. (Cmplt., ¶ 20.) When the tracks were removed, the section
13 of road they crossed was leveled, and no infrastructure was put into place to divert surface water into
14 Pioneer Ditch. (Cmplt., ¶ 20.)
15     Following completion of the track removal, neither the City nor the County adequately
16 inspected the track removal or reviewed the impact of the removal on the Master Drainage Plans.
17 (Cmplt., ¶ 22.) Neither entity inspected the storm drain or provided any maintenance to the storm
18 drain. (Cmplt., ¶ 22.)
19     On December 20, 2010, Plaintiffs' property became flooded with surface water. (Cmplt.,
20 ¶ 25.) Although surface water was directed to the storm drain on the northwest corner of West
21 Westfield Avenue, that storm drain was blocked causing water to run into West Westfield Avenue.
22 (Cmplt., ¶ 27.) At the historic railroad bed, water flowed across the bed into Plaintiff's property.
23 (Cmplt., ¶ 27.) Plaintiffs attempted to clear the debris from West Westfield Avenue and tried to
24 reestablish the historic drainage system; they called the City and the County to request help in
25 redirecting the water, and they rented a pump and purchased materials in an effort to lower the water
26 level on their Property. (Cmplt., ¶ 30.) However, the pump was unable to keep up with the water
27 flow, and the City and the County did not send anyone to assist Plaintiffs in redirecting the water.
28 (Cmplt., ¶ 31.)

As a result, the ground floor of Plaintiffs' home was flooded with approximately two and a half feet of water, Plaintiffs' garage was flooded with two feet of water, and Plaintiffs' storage shed was filled with over three feet of water. (Cmplt., ¶ 32.) Plaintiffs were forced to relocate to a hotel, and Plaintiffs' home and personal property were damaged or destroyed. (Cmplt., ¶ 38.)

On June 3, 2011, Plaintiffs submitted a claim for damages to the City; Plaintiffs submitted an amended claim on June 8, 2011. (Cmplt., ¶ 40.) The amended claim was rejected by the City on July 7, 2011. (Cmplt., ¶ 40.) On June 3, 2011, Plaintiffs submitted a claim for damages to the County; Plaintiffs submitted an amended claim on June 8, 2011. (Cmplt., ¶ 41.) The amended claim was rejected by the County on August 1, 2011. (Cmplt., ¶ 41.)

On June 14, 2011, Plaintiffs also sent notice of the impending action to San Joaquin Railroad Company and RailAmerica, Inc. (Cmplt., ¶ 42.) On September 6, 2011, Plaintiffs received notice from Rail America, Inc., who purported to be answering on behalf of all related railroad-entity defendants, with the exception of Union Pacific, and denied all liability associated with Plaintiffs' claim. (Cmplt., ¶ 42.)

### III.   PROCEDURAL BACKGROUND

On December 6, 2011, the RailAmerica Defendants removed the matter to this Court. (Doc. 1.) As the basis for federal court subject matter jurisdiction, the RailAmerica Defendants asserted that the state-law claims against them, including those against Union Pacific, are completely preempted by federal law. (Doc. 1, ¶¶ 6-11.) Specifically, the Railroad Defendants assert that the Interstate Commerce Commissioner Termination Act of 1995 ("ICCTA") contains an express preemption provision codified at 49 U.S.C. § 10501(b)(2). (Doc. 1, ¶¶ 6-11.) According to the Railroad Defendants, Section 10501(b)(2) completely preempts state law and thus creates a federal question for purposes of federal subject matter jurisdiction. (Doc. 1, ¶¶ 7-8.)

On December 9, 2011, in view of Defendants' removal, Plaintiffs proceeded to file a Petition for a declaratory order and a complaint with the Surface Transportation Board ("STB"), seeking a determination as to whether the STB has exclusive jurisdiction over the claims asserted in Plaintiffs'

4

civil action against the Railroad Defendants pursuant to the ICCTA. (*See* Doc. 22, Exhibit A.)[2] Both Union Pacific and the RailAmerica Defendants filed responses to Plaintiffs' petition with the STB. (*See* Doc. 22, Exhibits B, C.)

On December 29, 2011, Plaintiffs filed a motion to remand. (Doc. 15.) Plaintiffs assert, in part, that the claims against the County and the City were not separate and independent from the claims against the Railroad Defendants. (Doc. 16, 12:23-14:10.) As a result, the RailAmerica Defendants' failure to obtain the consent of the City and the County to remove the matter rendered the removal procedurally defective. (Doc. 16, 12:23-14:10.)

On January 6, 2012, the RailAmerica Defendants filed a motion to stay the action until such time as STB determined whether Plaintiffs' state law actions were preempted. (Doc. 21.) On January 24, 2012, Plaintiffs filed an opposition to the RailAmerica Defendants' request for a stay. (Doc. 27.) Plaintiffs contend that the removal is procedurally improper regardless of whether the court may assume subject matter jurisdiction over the case. (Doc. 27, 3:10 - 4:1.) Waiting for the STB to make a decision on Plaintiffs' petition is unnecessary because notwithstanding the result, the matter must be remanded on procedural grounds. (Doc. 27, 3:10 - 4:1.) Plaintiffs further assert that, if the STB determines it has exclusive jurisdiction to hear the claims against the Railroads, STB would decide those claims, not this Court. (Doc. 27, 5:8-14.) On January 30, 2012, Union Pacific filed a notice of non-opposition to the RailAmerica Defendants' motion to stay. (Doc. 29.) On February 2, 2012, The County of Tulare filed a statement of non-opposition to the motion to remand and the motion to stay. (Doc. 38.)

## IV.   DISCUSSION

### A.   Legal Standard

"A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441). It is presumed, however, "that a cause lies outside [the] limited jurisdiction [of

---

[2] The Railroad Defendants' requests for judicial notice are granted. (*See* Doc. 22, 25.)

the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal quotation marks omitted).

"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). The defendant always bears the burden of establishing that removal is proper, and the court "resolves all ambiguity in favor of remand." *Hunter*, 582 F.3d at 1042.

The propriety of removal requires the consideration of whether the district court has original jurisdiction of the action, i.e., whether the case could have originally been filed in federal court based on a federal question, diversity of citizenship, or another statutory grant of jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the case is within the original jurisdiction of the district court, removal is proper so long as the defendant complied with the procedural requirements set forth in 28 U.S.C. § 1446. The absence of subject matter jurisdiction is not waivable by the parties. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951).

Generally, federal courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citations omitted). "Under the longstanding well-pleaded complaint rule, . . . a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (internal citations omitted). A removing defendant may not rely on a federal defense to establish federal question subject matter jurisdiction. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2008).

Typically, a defense based on federal preemption of a state law cause of action is matter that can be addressed in state court. In other words, preemption defenses do not give rise to federal question jurisdiction pursuant to 28 U.S.C. § 1331, and does not provide removal jurisdiction under 28 U.S.C. § 1441. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908) (anticipation of federal defenses is not a sufficient basis for federal question jurisdiction). Under certain circumstances, however, the doctrine of "complete preemption" provides that state-law causes of

6

action become questions of federal law for purposes of 28 U.S.C. § 1331. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("[A] state claim may be removed to federal court in only two circumstances - when Congress expressly so provides, . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption.").

**B.    Defendants' Removal is Procedurally Defective and Requires Remand Pursuant to Section 1447(c)**

In the Notice of Removal, the RailAmerica Defendants indicate that the jurisdictional predicate for the removal is federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(b).[3] (Doc. 1, 2:1-4.) Specifically, the RailAmerica Defendants assert that all the claims are state-law claims; but as they relate to the RailRoad Defendants, they are completely preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), codified at 49 U.S.C. § 10101, *et seq*. According to the RailAmerica Defendants, this complete preemption creates a federal question, which provides this Court with original jurisdiction. The Notice of Removal also acknowledges that Union Pacific consented "to remove the separate and independent claims raising federal questions" and that the "other named defendants have been sued on claims raising only state law claims reflecting separate and independent claims." (Doc. 1, ¶ 5.)

In their motion to remand, Plaintiffs assert that the removal was defective because the RailAmerica Defendants failed to obtain the consent of all the defendants to the action, which is required. Further, Plaintiffs argue that the exception to the rule of unanimity[4] for separate and independent claims does not apply in this case because the non-removable claims are not separate and independent from the claims that the RailAmerica Defendants assert are completely preempted

---

[3] The reference to Section 1441(b) appears to be a typographical error in the Notice of Removal as the Notice itself references the "separate and independent claims" language of Section 1441(c), and the RailAmerica Defendants' opposition to Plaintiffs' motion to remand cites Section 1441(c) as the basis for removal. (Doc. 26, 4:8-9.)

[4] The United States Supreme Court articulated the rule of unanimity in *Martin,* holding that the removal statutes require that all defendants who may properly join in a removal petition must join. *Chi., Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245 (1900).

7

under the ICCTA. Specifically, Plaintiffs contend that the separate causes of action and separate theories of liability against the defendants are all transactionally related.

In their opposition to Plaintiffs' motion to remand, the RailAmerica Defendants[5] assert that removal jurisdiction is proper in cases where separate and independent claims are joined with non-removable claims under 28 U.S.C. § 1441(c). Citing *Henry v. Independent American Savings Association*, 857 F.2d 995, 999 (5th Cir. 1988), the RailAmerica Defendants contend that joinder of the City and County in the removal was not required because "when a case is removed for federal question jurisdiction, the parties defending the federal law claims are the only ones who need join in the removal." (Doc. 26, 21-23.) According to the RailAmerica Defendants, because the claims against the City and the County are brought under state law, the consent of those defendants was not required.

In their reply to the RailAmerica Defendants' opposition, Plaintiffs assert that they are seeking to recover losses from a single event – the flooding of their home due to all of the Defendants' wrongful actions. The claims against the Railroad Defendants are not separate and independent from the claims against the County and the City. (Doc. 32, 9:24-27.) Plaintiffs further argue that the RailAmerica Defendants' citation to the Fifth Circuit's decision in *Henry* conflicts with *Doe v. Kerwood*, 969 F.2d 165, 167 (5th Cir. 1992), a more recent Fifth Circuit case.

The RailAmerica Defendants do not dispute that only Union Pacific joined them in removal and that the County and City were served with process, but did not join the removal.[6] The RailAmerica Defendants' removal notice asserts that the claims against the Railroad Defendants are

---

[5] Union Pacific filed an opposition to the motion to remand, but did not address Plaintiffs' argument that the removal was procedurally improper.

[6] The Ninth Circuit has held that parties are not required to formally join in a notice of removal or to file individual documents showing consent for removal as some circuits require. *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1224 (9th Cir. 2009). In the Ninth Circuit, "[o]ne defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient." *Id.* The County has since filed an answer to the complaint on this Court's docket. However, this is not evidence of *timely* consent to the removal, and there was no averment in the Notice of Removal that any entity other than Union Pacific joined and consented to the RailAmerica Defendants' removal. (*See* Doc. 1, ¶ 5.) None of the Defendants asserts that the City or the County consented to the removal.

8

separate and independent from the claims against the County and the City. This contention appears to assert a broader exception to the rule of unanimity than the separate and independent claim exception applicable to removal pursuant to Section 1441(c). In their reply to Plaintiffs' opposition to the motion to stay, the RailAmerica Defendants again argue that the claims against the Railroad Defendants are governed by federal law because of the ICCTA preemption and are thus federal claims. According to the RailAmerica Defendants, federal claims are *necessarily* separate and independent from the state-law claims against the County and the City. Citing *Henry*, the RailAmerica Defendants continue to assert that where there are separate and independent federal claims, only the defendants to the federal claims are required to join in the removal. As set forth below, the Court declines to adopt the "refined exception" to the rule of unanimity that the RailAmerica Defendants present.

### 1. Unanimous Consent to Removal by All Defendants is Required

The United States Supreme Court's decision in *Martin* held that the removal statutes require that all defendants who may properly join in a removal petition must join the removal. *Chi., Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245 (1900); *see also Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981). This has been generally termed the "rule of unanimity." If all the defendants have not joined in the removal and an exception applies, the burden lies with the removing parties to establish the applicability of the exception. *Prize Frize, Inc. v. Matrix*, *Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999), *superseded by statute as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

### 2. Exceptions to the Unanimous Consent Requirement

There are several recognized exceptions to the rule of unanimity,[7] one of which relates to "separate and independent" claims removed pursuant to 28 U.S.C. § 1441(c). *Henry*, 857 F.2d at 999; s*ee also* 16 Moore's Federal Practice § 107.11[1][d] (3d ed) ("If removal is based on the presence [of] a separate and independent claim, . . . only those defendants who are defendants to the removable claim must be joined in the removal notice."). The pre-2012 version of 28 U.S.C. § 1441(c)[8] that applies to this action provides the following:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates.

28 U.S.C. § 1441(c) (2011).

A claim will be considered "separate and independent" from other claims if it involves an actionable wrong separate from the other claims and if complete relief may be afforded as to it without reference to the other claims and without the presence of the parties to the other claims. *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 13-14 (1951); *Erlich v. Oxford Ins. Co.*, 700 F. Supp. 495, 497 (N.D. Cal. 1988). Essentially, a separate and independent claim is one which does not arise from the same case or controversy as another claim.

---

[7] The consent of nominal, unknown, or fraudulently joined parties is not required. *See* 28 U.S.C. § 1446(a); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988). Further, exceptions to the rule of unanimity are recognized in cases where a non-joining defendant has not been served with process at the time the notice of removal is filed or the removal is noticed by the United States, any federal agency, or a named federal officer. *See* 28 U.S.C. §§ 1441(b), 1442; *see also Ely Valley Mines, Inc.*, 644 F.2d at 1315 (federal officer may remove suit without the consent of other co-defendants under Section 1442); *Davis v. Federal Savings & Loan Ins. Corp.*, 879 F.2d 1288, 1289 (5th Cir. 1989) (removal pursuant to 12 U.S.C. § 1730(k)(1) does not require consent of all co-defendants, whereas removal under the general removal statute does require consent of all defendants).

[8] The Court notes that 28 U.S.C. § 1441(c) was substantively amended on December 7, 2011, by the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (the "Act"). Pub.L. 112-63, Title I, § 103, Dec. 7, 2011, 125 Stat. 759. Despite being signed into law on December 7, 2011, the Act did not take effect until January 6, 2012. The Act is prospective in application as it applies to new state and federal lawsuits commenced on or after January 6, 2012. Pub.L. 112-63, Title II, § 205. As this case commenced in 2011, the amended version of Section 1441(c) is not applicable.

Citing two Seventh Circuit decisions, the Fifth Circuit determined in *Henry* that Section 1441(c) provides an exception to the unanimous consent rule governing removals. The court held that "[a]lthough failure of all defendants to join is usually a bar to removal, if one defendant's removal petition is premised on removable claims 'separate and independent' from the claims brought against other defendants, consent of the other defendants is not required." 857 F.2d at 999 (citing *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 183 (7th Cir. 1984) and *Thomas v. Shelton*, 740 F.2d 478, 483 (7th Cir. 1984)). Citing *Bernstein*, the Fifth Circuit reasoned that, "'if consent were required in such a case, a plaintiff might be able to prevent removal of a federal claim by joining an unrelated claim against a different defendant, and this would reduce the effectiveness of section 1441(c) in making separate and independent claims a basis for removal.'" *Id.* (quoting *Bernstein*, 738 F.2d at 183). And, although not discussed by the Fifth Circuit, this Court notes that an unrelated non-removable claim that is swept up in removal may be potentially remanded under Section 1441(c). With regard to non-consenting co-defendants against whom a non-removable claim is stated, this provides an avenue to seek remand.[9] Thus, non-consenting defendants are not without a method to challenge the forum.[10]

Springing from this exception to unanimous joinder under Section 1441(c), a minority of courts has recognized a "refined approach" or the "Hill exception" (*see Hill v. City of Boston*, 706, F. Supp. 966, 968 (D. Mass. 1989)), which is a broader approach to the separate and independent claim exception to the rule of unanimity. *See, e.g., Moscovitch v. Danbury Hosp.*, 25 F. Supp. 2d 74 (D. Conn. 1998). Under this approach, where a removable claim is combined with non-removable

---

[9] Moore's Federal Practice provides a discussion of the remand provision included in the 1990 amended version of Section 1441(c). *See* James Wm. Moore et al., Moore's Federal Practice Guide § 107.14[6][6] (3d ed. 2011). Moore's notes that "[s]everal courts and the Commentary to 28 U.S.C. § 144(c) suggest that the [1990] amendment confers considerable discretion to the courts to 'remand . . . the whole case, with the federal claim[s] included,' where state law claims are found to predominate." § 107.14[6][g] (quoting *Moralez v. Meat Cutters Local 539*, 778 F. Supp. 368, 370 (E.D. Mich. 1991)); *see also* § 107.14[6][g] n. 330 (collecting cases for the proposition that district courts retain broad discretion to remand when state law predominates).

[10] The Court notes that under the December 2011 amended version of Section 1441(c), the non-removable claims must be remanded to state court. *See* 28 U.S.C. § 1441(c)(2) (December 7, 2011) ("the district court *shall* sever from the action all [non-removable claims] and *shall* remand the severed claims to the State court from which the action was removed") (emphasis added).

11

claims, only the defendants against whom the removable claims are stated are required to consent to the removal. At a glance, this might appear to be simply a restatement of the separate and independent claims exception; indeed, some courts appear to have conflated the two. *See, e.g., Aura Sys., Inc. v. Loeb & Loeb*, No. CV 09-969 PSG (SSx), 2009 WL 904132, *2 (C.D. Cal., Mar. 31, 2009). The refined approach, however, cuts a wider path than does the traditional exception articulated by the Fifth Circuit in *Henry*.[11]

The distinction between the two is that, under the refined approach, the "separate and independent" language is not applied as described in the Supreme Court's decision in *Finn*, 341 U.S. at 13-14. Instead, the refined approach focuses only on the fact that there are mixed federal and state claims, regardless of whether the federal claims are separate and independent from the state claims or whether the state-law claims are part of the same case or controversy as the federal-law claims, i.e., the state-law claims fall within the supplemental jurisdiction of federal courts under 28 U.S.C. § 1367. In other words, "the . . . 'refined approach' . . . considers *any* federal claim to be separate and independent from state claims." *Harbour Light Towers Ass'n, Inc. v. Ameriflood, LLC*, No. 8:10-cv-2183-T-33EAJ, 2011 WL 2517222, at * 6 n.2 (M.D. Fla. June 23, 2011) (emphasis added). As a result, under the refined approach, complete unanimity of consent for removal under Section 1441(c) is not required *any time* there are federal claims mixed with state claims, *so long as* all defendants to the federal claims consent to the removal.

The reasoning underpinning the refined approach appears to stem from a concern that plaintiffs will attempt to cut off federal claim defendants from removal by serving the defendants subject to any state claims (who cannot remove the action) first. In theory, a plaintiff could serve

---

[11] The parties' briefs indicate a failure to recognize this distinction. Teasing out the two approaches, however, is not a straight-forward matter. Even authoritative secondary sources, such as the Rutter Group, do not highlight the subtleties presented by the case authorities. *See* William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial, § 2:3464 (2011) (Citing *Martin* for the proposition that "[e]ven supplemental parties (*see* ¶ 2:895) must join since they are parties to 'one constitutional case'" but also citing *Moscovitch* and indicating that "defendants named *only* in *nonremovable* claims . . . need not join."). In any event, subsequent to January 6, 2012, the amendment to Section 1441(c) moots the distinction in any case, as it codifies the unanimous consent requirement where all claims arise out of the same case or controversy. *See* 28 U.S.C. § 1446(b)(2)(A) (2012). Unfortunately for purposes of this case, the amended version of Section 1441(c) does not apply, and the Court must address the issue under the caselaw paradigm existing prior to the amendment.

12

process on only the state-claim defendants, allow more than 30 days to lapse, and then serve any separate federal-claim defendants. Using this strategy, if the later-served federal-claim defendants wanted to remove the case, the time for the state-claim defendants to consent to removal would have lapsed under 28 U.S.C. § 1446(b) ("notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant").[12] In this way, the unanimous consent requirement may contribute to gamesmanship with regard to the forum.

This argument, however, was specifically addressed and rejected in *Doe v. Kerwood*, 969 F.2d 165, 167-68 (5th Cir. 1992). In *Kerwood*, the Fifth Circuit held that "[t]his scenario does not justify the creation of an exception to the unanimous consent rule" and that, "should such a situation arise, it is within the equitable powers of the court to consider such exceptional circumstances on a case-by-case basis." *Id.* at 169. Other courts rejecting the refined approach have reasoned that such an exception would allow a single defendant among many to impose its choice of forum on not only one unwilling plaintiff, but on unwilling co-defendants as well. *See, e.g., Gibson v. Inhabitants of Burnswick*, 899 F. Supp. 720, 721 (D. Me. 1995). For these reasons, the refined approach has been disapproved by a majority of courts as too broad an exception to the rule of unanimity. *See e.g., Kerwood*, 969 F.2d at 167-68;[13] *Shepard v. City of Philadelphia*, No. Civ. A. 00-CV-6076, 2011 WL 92300 (E.D. Pa. Jan. 31, 2011) (collecting cases, noting the majority of courts have rejected the refined approach); *Shepherd v. GMAC Mortg.*, No. 09-cv-2497-LAWB (CAB), 2010 WL 3633053, at *1 - *3 (S.D. Cal. Sept. 10, 2010); *Mayo v. Christian Hosp. N.E.-N.W.,* 962 F. Supp. 1203, 1205 (E.D. Mo. May 2, 1997).

---

[12] This assumes, of course, that it is the service of the first defendant that commences the 30-day removal period. *See Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir. 1986) (adopting "first-served" rule). In jurisdictions utilizing a "last-served defendant rule," such consent issues would be obviated. S*ee Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999) (applying "last-served" rule, holding that last defendant served commences 30-day removal period); *cf. United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 763 n.4 (9th Cir. 2002) (declining to express an opinion on the propriety of either rule).

[13] Although Plaintiffs argue that the Fifth Circuit's decisions in *Kerwood* and *Henry* are in conflict, they are actually in accord. In *Henry*, the Fifth Circuit adopted the separate and independent claim exception to the rule of unanimity. In *Kerwood*, however, the Fifth Circuit refused to broaden the exception by applying the refined approach.

### 3. The Court Declines to Adopt the Refined Approach

The Ninth Circuit has not expressly determined the propriety of the refined approach, and, given the 2011 amendment to Section 1441(c), may never reach the issue. Considering, however, the persuasive authority of the Fifth Circuit, district court decisions within this circuit, and a majority of district courts around the nation, the Court finds that the criticism of the refined approach is warranted. Moreover, the refined approach is incompatible with the Supreme Court's decision in *Martin*. 178 U.S. at 251. In *Martin*, the Supreme Court held that remand was proper where a group of federally appointed receivers failed to obtain the consent of all defendants, even though only the receivers would have been able to remove the case. *Id.* at 251. The Court reasoned that, even assuming the case against the receivers was governed by federal law, the controversy, and the case against the state-law claim defendants, "was not a separable controversy within the meaning of the act." *Id.* As a result, all defendants were required to join the removal petition. *Id.* The refined approach, that finds federal claims and state claims to be necessarily separate and independent for purposes of removal under Section 1441(c), conflicts with the Supreme Court's holding in *Martin*. Therefore, the Court follows the majority approach rather than the minority refined approach in analyzing whether the "separate and independent" claim exception to the rule of unanimity applies here.

### 4. Plaintiffs' Claims Against Defendants are Not Separate and Independent

In *Finn*, the Supreme Court held that no separate and independent claim or cause of action exists under Section 1441(c) "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions." 341 U.S. at 9-10. In other words, claims are not separate and independent if they are derived from the same set of facts or the alleged injury is the result of a series of interrelated transactions. In sum,

> what is determinative [is] the singularity of the harm suffered by the plaintiff, and not the various theories of recoveries used to address or compensate from that harm. Thus, the issue is not whether there is more than one cause of action. Rather the issue is whether these causes of action are truly separate from one another, and not simply different methods of addressing the underlying harm.

*Rey v. Classic Cars*, 762 F. Supp. 421, 424 (D. Mass. 1991) (citing *New England Concrete Pipe Corp. v. D/C Sys. of New England, Inc.*, 658 F.2d 867, 872 (1st Cir. 1981)).

Here, although Plaintiffs assert several causes of action against different defendants, the claims directed against the Railroad Defendants, even assuming they are governed by federal law, do not constitute "separate and independent claims" under Section 1441(c). Plaintiffs assert that, in the course of removing the railroad tracks adjacent to Plaintiffs' Property, the Railroad Defendants unreasonably diverted surface water by obstructing Pioneer Ditch and the exits from the storm drain that collected water from the northwest corner of Main Street and West Westfield Avenue. (Cmplt., ¶¶ 44-54.) Plaintiffs' claims against the City and the County allege that the municipal entities compounded the problem created by the Railroad Defendants in not inspecting the track removal to verify that the master drainage plan had not been altered. (Cmplt., ¶ 60.) Plaintiffs contend that the City and County's negligent maintenance of the surface water storm drainage system and their failure to mitigate the changes made by the Railroad Defendants to the drainage plan during the track removal significantly increased the surface water that was diverted onto Plaintiffs' Property. Further, Plaintiffs state claims of trespass and nuisance against all Defendants alleging that each of them caused surface water to enter Plaintiffs' Property and the water created a condition that constituted a nuisance. Finally, Plaintiffs assert that all Defendants negligently breached their duty to avoid causing harm to Plaintiffs' Property and to "abstain from changing or altering Defendants' property unreasonably and in a manner that causes harm to Plaintiffs and Plaintiffs' Property." (Comp. ¶ 89.) As a result of this negligence, Plaintiffs allege both their real property and their personal property were damaged.

As Plaintiffs correctly note, the claims against the Railroad Defendants cannot be separate and independent from the negligence claim against the City and the County, particularly because the various conduct of all of the Defendants caused Plaintiffs a single harm: flood damage to Plaintiffs' Property. *See Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1177 (9th Cir. 1969) ("A single wrong cannot be parlayed into separate and independent causes of action by multiplying the legal theories upon which relief is sought or by multiplying defendants against whom a remedy is sought

for the same injury."). While the RailAmerica Defendants appear to assert that the federal claims are necessarily separate and independent from the state claims against the County and the City, under the analysis provided by the Supreme Court in *Finn*, the claims against the County and the City are part of the same interlocked series of transactions as the claims asserted against the Railroad Defendants. *See Finn*, 341 U.S. at 14 ("[W]e conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under [Section] 1441(c)."); *see also, Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996) ("We have held that a claim is not independent if it involve[s] substantially the same facts.") (internal citations and quotation marks omitted). As the RailAmerica Defendants have not satisfied their burden to establish that the claims against the Railroad Defendants are separate and independent, the exception to the rule of unanimity does not apply and the consent of all Defendants to the removal was required. The County and City did not consent; thus, the removal requirements were not satisfied and the matter must be remanded.

**5. Plaintiffs' Request for An Award of Attorney's Fees**

Plaintiffs request that they be awarded attorney's fees, asserting that the removal was not supportable on preemption grounds, it was procedurally defective because of the lack of unanimous consent, and the RailAmerica Defendants refused to meet and confer or even respond to Plaintiffs' proffer of supporting law indicating the removal was pursued solely for purposes of harassment and delay. (Doc. 16, 14:13-15:15.) The RailAmerica Defendants contend Plaintiffs should not be awarded attorney's fees because the matter was properly removed pursuant to Section 1441(c), and there is a legitimate dispute between the parties regarding the jurisdictional question of preemption. (Doc. 26, 5:16-22.)

Pursuant to 28 U.S.C. § 1447(c), when a motion to remand is brought, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." While the decision to award fees is in the trial court's broad discretion, "absent unusual circumstances, courts may award attorneys' fees . . . only where the

removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, there was an objectively reasonable basis to seek removal due to the asserted complete federal preemption of the state claims against the Railroad Defendants. While the Court need not reach the question of whether complete preemption applies, the arguments presented by the parties indicate an objectively reasonable dispute as to whether Section 10501(b) of the ICCTA completely preempts state law or whether it may only be used to assert defensive preemption. Moreover, as to the procedural deficiency, because the caselaw is not entirely uniform with regard to the refined approach, there was at least a reasonable, albeit unsuccessful, argument that it could be applied here. Thus, Plaintiffs' request for attorney's fees is DENIED.

**C.    Federal Question Jurisdiction and Remaining Arguments**

As the removal was procedurally improper due to the lack of unanimous consent to the removal, the Court does not reach the question whether the ICCTA completely preempts the state-law claims against the Railroad Defendants. Even assuming that complete preemption applies for jurisdictional purposes, the matter is still subject to remand because of the lack of unanimous consent to the removal. Any remaining arguments are moot in light of the removal procedural defect.

**D.    The RailAmerica Defendants' Motion to Stay is DENIED as MOOT**

As Plaintiffs' motion to remand is granted, the motion to stay filed by the RailAmerica Defendants is moot and is denied as such.

## V.    CONCLUSION AND ORDER

For the reasons stated above, it is HEREBY ORDERED that:

1.    Plaintiffs' Motion to Remand is GRANTED;

2.    Plaintiffs' Request for Attorney's Fees and Costs is DENIED;

2.    Defendants' Motion to Stay is DENIED as MOOT;

3.    This action is hereby REMANDED to the Tulare County Superior Court; and

///

4. The Clerk of Court is DIRECTED to serve a copy of this order on the Tulare County Superior Court.

IT IS SO ORDERED.

**Dated:    February 9, 2012**                          /s/ Sheila K. Oberto
                                                     UNITED STATES MAGISTRATE JUDGE